1    **WO**                                                                      JDN

2

3

4

5

6                **IN THE UNITED STATES DISTRICT COURT**

7                    **FOR THE DISTRICT OF ARIZONA**

8
Pedro O. Camarena,                      )    No. CV 06-0318-PHX-MHM (DKD)
9                                         )
                Plaintiff,               )    **ORDER**
10                                        )
vs.                                      )
11                                        )
Maricopa County Correctional Health)
12   Services, et al.,                    )
                                          )
13              Defendants.               )
                                          )
14   _____    )

15          In this civil rights action brought by a former county jail inmate, Defendant Maricopa

16   County Correctional Health Services (CHS) moved to dismiss on the grounds that Plaintiff

17   failed to exhaust administrative remedies and CHS is a non-jural entity that cannot be sued

18   (Doc. #36).  Plaintiff filed a response and then the Court provided him a second opportunity

19   to respond, which he did (Doc. ##39, 52).  CHS replied to Plaintiff's first response and

20   moved to strike his second response (Doc. #43, 61).  The Court will deny CHS's Motion to

21   Strike, and grant its Motion to Dismiss.

22   **I.      Background**

23          Plaintiff sued CHS and Glendale Police Officer #10704, who has been identified as

24   Robert MacDonald[1] (Doc. #1; see Doc. #26).  Plaintiff alleged that he was denied medication

25   to treat a painful bone disease (Count I), and that MacDonald illegally searched his home and

26

27   _____

28          [1]Upon screening, the Court dismissed the Towers Jail and Lower Buckeye Jail
     facilities, and the City of Glendale Police Department as Defendants (See Order, Doc. #15).

1
2

destroyed property after arrest (Count III)[2] (Id.).  The Court ordered an answer, and CHS filed a Motion to Dismiss (Doc. ##15, 36).

3
4
5
6
7
8
9
10
11
12
13
14

In its motion, CHS argued that as a subdivision of the county, it is a not an entity capable of being sued (Doc. #36 at 2).  CHS also contended that Plaintiff failed to exhaust administrative remedies as required by the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (Id. at 3).  In support, CHS submitted the affidavit of Susan Fisher, a Sergeant assigned to the Inmate Hearing Unit (Id., Ex. 1).  Fisher attested that inmates may grieve all issues that pertain to conditions of confinement and that officers pass out grievances as part of their daily duties (Fisher Aff. ¶ 5).  She further attested that, according to the inmate grievance records, Plaintiff filed just two grievances during his confinement at the jail (Id. ¶ 7).  One grievance concerned a request to be housed in a different pod, and the other was about legal materials (Id.).  CHS also proffered copies of the Inmate Grievance Procedure, Policy DJ-3, and two pages from the "Rules and Regulations for Inmates" (Exs. A-B, Doc. #36).

15
16
17
18
19
20
21
22
23
24

Plaintiff responded to the motion and argued that because the caption of his Complaint was corrected to reflect the proper name of CHS, the argument that it cannot be sued is moot (Doc. #39 ¶¶ 5-7).  Plaintiff also argued that he did submit numerous grievances about medical care and claimed that he has copies of all these forms and will submit them upon his release from prison (Id. ¶¶ 12, 26).  As to the grievance procedures at the jail, Plaintiff asserted that medical grievances were unnecessarily delayed in an effort to discourage inmates from filing grievances (Id. ¶ 18).  He further claimed that detention officers often informed inmates that "they ran out of forms," thereby making the grievance system unavailable (Id. ¶ 28).  Finally, he alleged that when he was transferred from the jail to the state prison facility, all jail copies of grievances were destroyed (Id. ¶ 25).

25

The Court then issued an order that informed Plaintiff of the evidence necessary to

26
27
28

---

[2] Plaintiff also alleged that the jails were overcrowded (Count II), but the Court dismissed the count for failure to state a claim against a named Defendant (See Order, Doc. #15).

- 2 -

1  successfully rebut CHS's contentions and provided additional time to file another response

2  to CHS's motion (Doc. #41).  In his second response Plaintiff argued that the grievance

3  forms were misleading and, because the sheriff's office had full control over the grievance

4  system, they were able to stop grievances at the initial steps so that there was no

5  administrative record of exhaustion (Doc. #52 ¶¶ 5-7).  He reiterated his claim that the

6  grievance system was delayed so that once a grievance proceeds to a higher level, the inmate

7  has already been transferred to another facility (Id. ¶ 8).

8        Plaintiff also filed a Motion of Judicial Notice, which the Court construed as a

9  supplement response to CHS's motion (Doc. #55, see Order, Doc. #62).  Plaintiff again

10  argued that he corrected the caption of the Complaint to reflect the proper name of the

11  defendant (Id. ¶¶ 2-6).  And he contended that many of the rules set forth in the Inmate

12  Grievance Procedures allow for CHS to stop grievances at any stage in the process (Id. ¶¶

13  14-18).

14        Plaintiff submitted an affidavit that primarily addressed the merits of his underlying

15  claim (Doc. #56 ¶¶ 1-11).  As to the issue of exhaustion, Plaintiff attested that the majority

16  of inmate grievance forms were thrown away thereby prohibiting medical grievances from

17  reaching the appellate levels of the grievance system (Id. ¶¶ 15, 17).  Attached to the affidavit

18  were copies of (1) Special Needs Orders, Health Needs Requests, and grievances submitted

19  by Plaintiff in 2006 and 2007; (2) letters from previous physicians who treated Plaintiff in

20  2002 and 2004 for degenerative disc disease in his lumbar spine; and (3) an inmate letter and

21  response dated February 2007 (Attachs., Doc. #56).

22        In addition, Plaintiff proffered a declaration supporting his claims that grievance

23  forms were delayed and/or destroyed and never reached the higher levels of the

24  administrative grievance process (Doc. #57 ¶¶ 6, 14(4-5)).  He avowed that the jail's

25  grievance system was corrupt and that the sheriff's office purposefully withheld evidence of

26  his grievances (Id. ¶ 11). Plaintiff attached more copies of inmate letters and grievances from

27  2006, and pages from the "Rules and Regulations for Inmates" (Attachs., Doc. #57).

28        CHS did not file a reply to Plaintiff's second response.  Instead, CHS moved to strike

1   the second response on the ground that only one responsive memorandum is permitted under

2   Fed. R. Civ. P. 12(f) (Doc. #61).

3   **II.    Exhaustion**

4      Plaintiff must first exhaust "available" administrative remedies before bringing this

5   action.  See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir.

6   2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005).  He must complete the

7   administrative review process in accordance with the applicable rules.  See Woodford v.

8   Ngo, 126 S. Ct. 2378, 2384 (2006).  Exhaustion is required for all suits about prison life,

9   Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through

10  the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

11     Exhaustion is an affirmative defense.  Jones v. Bock, 127 S. Ct. 910, 919-21 (2007).

12  Defendant bears the burden of raising and proving the absence of exhaustion.  Wyatt v.

13  Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  Because exhaustion is a matter of abatement

14  in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide

15  disputed issues of fact.  Id. at 1119-20.  Further, a court has broad discretion as to the method

16  to be used in resolving the factual dispute.  Ritza v. Int'l Longshoremen's &

17  Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

18  **III.   Analysis**

19     At the outset, the Court will deny CHS's Motion to Strike Plaintiff's second response

20  (Doc. #61).  After Plaintiff's first response was filed, the Court issued its Order notifying

21  Plaintiff of his responsibility to respond to CHS's motion (Doc. #41).  Pursuant to that Order,

22  Plaintiff timely filed his second response (Doc. #52).

23     As stated, CHS bears the burden of proving lack of exhaustion, and therefore must

24  demonstrate that there were remedies available to Plaintiff.  See Wyatt, 315 F.3d at 1119;

25  Brown, 422 F.3d at 936-37.  CHS demonstrated that a grievance system was available at the

26  jail for Plaintiff's claim concerning the denial of medication (Fisher Aff.  ¶¶ 3-4; Ex. A, Doc.

27  #36).

28     Plaintiff's contentions regarding exhaustion of Count I are inconsistent.  In his

- 4 -

1   Complaint, he asserted that he filed a request for administrative relief on his claim and

2   appealed it to the highest level; yet, he also indicated that he was told his complaint was not

3   a grievable issue (Doc. #1 at 4).  Then in his response memorandums and sworn statements,

4   Plaintiff alleged that officials at the jail frustrated his ability to exhaust by delaying

5   grievances or throwing them away (Doc. ##39, 52, 56-57).  Plaintiff has not alleged,

6   however, exactly what transpired when he attempted to grieve his claim, nor has he specified

7   who was involved in delaying or frustrating his ability to appeal.  Without more specific

8   allegations, Plaintiff cannot overcome CHS's evidence showing that a grievance system was

9   available at the jail for Count I.

10          Plaintiff also claimed that he was unable to complete the grievance process because

11  he was transferred.  A transfer between two different systems may render remedies

12  unavailable.  See, e.g., Bradley v. Washington, 441 F. Supp. 2d 97, 102-03 (D. D. C. 2006)

13  (denying motion to dismiss for lack of exhaustion where inmate was transferred from jail to

14  federal system, and jail's grievance procedures made no provision for submission of

15  complaint for persons no longer detained in the jail).  But Plaintiff's evidence does not

16  support a finding that remedies were unavailable due to his transfer.  The inmate letters and

17  grievances that Plaintiff submitted are all dated after January 26, 2006—the date this action

18  was filed.  Under the PLRA, a prisoner must exhaust remedies *before* filing suit.  Vaden, 449

19  F.3d at 1051.  Plaintiff filed his Complaint while he was still confined in the Lower Buckeye

20  Jail; thus, his inability to complete the grievance procedures before filing suit cannot be

21  attributed to a transfer (See Doc. #1 at 1).

22          CHS claimed that Plaintiff did not file any grievances concerning medical care;

23  however, Plaintiff proffered evidence that in March 2006, he submitted a grievance about

24  medication (Attach., Doc. #57).  Regardless, because this grievance was submitted after

25  Plaintiff's suit was filed, it does not support his claim for exhaustion.

26          In sum, Plaintiff's lack of sufficient evidence that he exhausted available grievances

27  prior to filing suit, and his conflicting statements regarding whether he filed grievances, are

28  insufficient to overcome CHS's evidence of nonexhaustion for Count I.

1  **IV.  CHS Status as a Defendant**

2      In the alternative, the Court finds that CHS's second argument for dismissal—that it

3  is not a legal entity capable of being sued—has merit.  Municipalities and other local

4  governing bodies are included among those "persons" who may be sued under § 1983.

5  Monell v. Department of Social Services of New York, 436 U.S. 658, 690-91 (1978).

6  Because CHS is not a municipal corporation, a local governing body, or a private

7  corporation, it is not a "person" amenable to suit under § 1983.  Maricopa County is

8  responsible for providing medical care to county jail inmates.  See Ariz. Rev. Stat. § 11-

9  291(A).  Any actions against a county policy must be brought against the county itself and

10  not against an administrative subdivision of the county; thus, CHS is an improper defendant.

11      In light of the reasons set forth above, CHS's motion will be granted and CHS will

12  be dismissed from this action.

13  **IT IS ORDERED**:

14      (1) Defendant CHS's Motion to Strike (Doc. #61) is **denied**.

15      (2) Defendant CHS's Motion to Dismiss (Doc. #36) is **granted**.  Count I is dismissed

16  without prejudice for lack of exhaustion and Maricopa County Correctional Health Services

17  is dismissed as a Defendant.

18      (3) The remaining claim is Count III against Defendant MacDonald.

19      DATED this 23rd day of March, 2007.

20

21

22  _____

Mary H. Murguia
United States District Judge

23

24

25

26

27

28